■ JANET A. GIARRATANO, Appellant, v KENNETH S. SILVER, Respondent. [847 NYS2d 698]—

Kane, J. Appeal from an order of the Supreme Court (Williams, J.), entered January 17, 2007 in Saratoga County, which, among other things, granted defendant's motion for summary judgment dismissing the complaint.

In the 1980s, defendant, a certified public accountant, began preparing plaintiff's annual tax returns. When plaintiff received life insurance proceeds after her husband's death in 1995, she turned to defendant for investment advice. Defendant met with plaintiff, then sent her a letter recommending how she should invest this money. One of the proposed investments was for $100,000 in J & B Management Company bonds, a high-risk investment with returns of 12%. Defendant helped plaintiff complete the subscription documents and forwarded them on to J & B. Defendant contends that he assisted plaintiff as a "very close" friend and received no compensation for his efforts, although J & B's president paid defendant fees for tax consulting services. The parties dispute whether defendant discussed other types of options, whether he explained the risks associated with this investment and whether he gave plaintiff a prospectus prior to her investing in J & B. Plaintiff acknowledges that she received a prospectus directly from the company after her subscription, which delineated the risks involved in the investment. Significantly, plaintiff does not allege any specific contact with defendant concerning the contents of the prospectus after she received that document. Defendant continued to prepare plaintiff's annual tax returns through the 2002 tax year.

J & B paid plaintiff the expected monthly amount for two years. It was acquired by another company in 1997. Plaintiff averred that this aroused her suspicions so she called defendant, who allegedly advised her not to sell because her investment was safe. The monthly payments continued until early 2000, shortly before the acquiring company filed for bankruptcy. Plaintiff corresponded with defendant about this situation, and defendant responded by letter in February 2004 explaining what he knew about the bankruptcy.

Plaintiff commenced this action in June 2004, containing

seven causes of action related to defendant's advice regarding her investment.* Following discovery, defendant moved for summary judgment dismissing the complaint. Plaintiff cross-moved for summary judgment. Supreme Court denied the cross motion and granted defendant's motion, concluding that all of plaintiff's causes of action were precluded by the statutes of limitations. On plaintiff's appeal, we affirm.

The applicable statutes of limitations bar all of plaintiff's causes of action and none of the statutes is tolled. The claim for accounting malpractice is governed by a three-year statute of limitations (see CPLR 214 [6]; Ackerman v Price Waterhouse, 84 NY2d 535, 541 [1994]). This cause of action accrued in 1995, when defendant assisted plaintiff in procuring the J & B investment (see Williamson v PricewaterhouseCoopers LLP, 9 NY3d 1, 7-8 [2007]; Ackerman v Price Waterhouse, 84 NY2d at 541). The statute of limitations in a malpractice case may be tolled "where the parties engaged in a continuous professional relationship," but only "where the continuous representation was in connection with the particular transaction which is the subject of the action" (Mitschele v Schultz, 36 AD3d 249, 253 [2006] [emphasis omitted]). A recurring use of a professional's services does not constitute continuous representation if the later services are not related to the original services which gave rise to the action (see id.; Booth v Kriegel, 36 AD3d 312, 314 [2006]). As recently held by the Court of Appeals, utilizing an accounting firm's services for annual tax preparation or auditing services constitutes the provision of separate and discrete services for each year, precluding application of the continuous representation doctrine (see Williamson v PricewaterhouseCoopers LLP, 9 NY3d at 10-11; Booth v Kriegel, 36 AD3d at 313). Defendant's preparation of plaintiff's tax returns through the 2002 tax year did not toll the statute of limitations. Although plaintiff alleges that defendant provided her with continuous investment advice through 2004, mentioning the J & B investment in connection with annual tax preparation did not constitute representation related to the original investment advice given in 1995. Plaintiff's assertion of a few calls or sporadic correspondence in relation to the J & B investment did not show the "mutual understanding" of both parties that is required to establish continuous representation (see Williamson v Pricewaterhouse-Coopers LLP, 9 NY3d at 11).

Contrary to plaintiff's assertions, no toll arises from defendant's failure to affirmatively state that he was not a licensed

---

* Plaintiff conceded in Supreme Court that her General Business Law § 349 claim is not viable and she does not argue in support of that claim here.

securities broker and was not authorized to sell securities. There is no proof that defendant ever stated or implied that he was a securities broker, or that plaintiff thought he was. Thus, there was certainly no fraudulent concealment of his status (*see Mitschele v Schultz*, 36 AD3d at 254-255).

Similarly, there was no concealment of divided loyalties so as to constitute a breach of a fiduciary duty, as argued by plaintiff. Defendant received a free trip and golf outing from J & B and one of its brokers, but that occurred several years prior to plaintiff's investment. Payment of accounting fees to defendant by the president of J & B for personal accounting services was not a commission or payment related to plaintiff's investment in J & B and did not create a conflict of interest. The record is devoid of any compensation, commissions or payments to defendant from any source in relation to plaintiff's investment. Even if divided loyalties were proven, plaintiff should have made further inquiries after she received the prospectus disclosing the risks of the investment. Thus, the statute of limitations was not tolled on the breach of fiduciary duty cause of action.

Equitable estoppel is not available to prevent defendant's assertion of statute of limitations defenses. To enjoy the benefits of estoppel, plaintiff was required to show that she was induced to refrain from timely commencing an action due to defendant's affirmative wrongdoing (*see Mitschele v Schultz*, 36 AD3d at 253; *Coopersmith v Gold*, 172 AD2d 982, 983 [1991]). She failed to present evidence of any wrongdoing by defendant subsequent to her receipt of the prospectus which prevented her from commencing an action or reasonably lulled her into a position of inaction.

The fraud claim is also barred by the statute of limitations. A fraud cause of action must be commenced within six years from the time the fraud was committed or within two years from the time the fraud was discovered or could have been discovered through reasonable diligence (*see* CPLR 213 [8]). At the time she received the prospectus which indicated the high-risk nature of the investment, plaintiff was on notice of what she now alleges was fraud by defendant. Plaintiff testified at her deposition that she became suspicious when J & B was taken over by a new company in 1997. That company ceased making monthly payments to her in 2000 and she was informed of the company's bankruptcy filing later that year. She could have discovered any alleged fraud at least by that time, making her 2004 filing of this action untimely.

Plaintiff's breach of contract claim was merely a rephrasing of the malpractice claim and, in any event, was covered by a

three-year statute of limitations (*see* CPLR 214 [6]; *Mitschele v Schultz*, 36 AD3d at 252). As the various applicable statutes of limitations bar all of plaintiff's causes of action, dismissal of the complaint was appropriate.

Cardona, P.J., Mugglin, Rose and Lahtinen, JJ., concur. Ordered that the order is affirmed, with costs.